No. 25-2077

# In the United States Court of Appeals for the First Circuit

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, et al.; IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, As Representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, As Representative for the Puerto Rico Highways and Transportation Authority; IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, As Representative for the Puerto Rico Electric Power Authority (PREPA); IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, As Representative of the Puerto Rico Public Buildings Authority,

*Debtors.*

*(For Continuation of Caption See Inside Cover)*

On Appeal from the United States District Court
for the District of Puerto Rico
Case Nos. 17-BK-3283-LTS; 17-BK-4780-LTS, Laura Taylor Swain,
District Judge

## REPLY BRIEF OF APPELLANTS LUMA ENERGY, LLC AND LUMA ENERGY SERVCO, LLC

LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC,

*Movants-Appellants*

v.

PUERTO RICO DEPARTMENT OF CONSUMER AFFAIRS (DACO); INSTITUTO DE COMPETITIVIDAD Y SOSTENIBILIDAD ECONOMICA (ICSE),

*Respondents-Appellees*

David Horniak (Bar No. 1187585)
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

Brett Ingerman (Bar No. 1220681)
Dale K. Cathell (Bar No. 1143481)
**DLA PIPER LLP (US)**
650 S. Exeter Street, Ste. 1100
Baltimore, MD 21202-4576
T: (410) 580-4177
brett.ingerman@us.dlapiper.com
dale.cathell@us.dlapiper.com

Mariana Muñiz Lara (Bar No. 1172817)
**DLA PIPER (PUERTO RICO) LLC**
B7 Tabonuco Street, Ste. 1501,
Guaynabo, Puerto Rico 00968-3349
T: (787) 945-9106
mariana.muniz@us.dlapiper.com

*Counsel for Movants-Appellants*
*LUMA Energy, LLC and LUMA Energy Servco, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 3

I.      LUMA Has Standing to Appeal. ................................................ 3

        A.      The Title III Court's Order Directly and Adversely
                Affects LUMA's Pecuniary Interests. ................................... 3

        B.      Appellees' Contrary Standing Arguments Lack Merit .......... 7

                1.      Creditors May Invoke the Automatic Stay Where
                        They Have a Sufficient Stake in Its Protection ............ 7

                2.      LUMA's Injuries Are Concrete, Not Speculative. ...... 12

                3.      The OMA's Indemnification Provisions Do Not
                        Eliminate LUMA's Injury. ......................................... 14

II.     The Title III Court Erred by Failing to Analyze the Statutory
        Text of Section 362(b)(4). ........................................................ 16

        A.      DACO Is Not "Enforcing" any Regulation, Order, or
                Penalty Within Its Police or Regulatory Power. ................. 17

        B.      Appellees' Arguments Are Inconsistent with the Text of
                Section 362(b)(4) ............................................................... 20

        C.      The Title III Court and Appellees Conflate DACO's
                General Remit with Enforcement of Its Police Powers. ....... 25

III.    DACO's Lawsuit Fails the Pecuniary-Purpose and Public-
        Policy Tests ............................................................................... 26

        A.      The Pecuniary-Purpose Test: The Lawsuit's Primary
                Effect Is to Facilitate Private Monetary Recoveries. .......... 26

        B.      The Public-Policy Test: DACO's Lawsuit Does Not
                Enforce Generally Applicable Regulatory Law. ................. 28

        C.      Appellees Misread the Authorities on Which They Rely. ... 29

IV.     Because the Stay Applies, the Puerto Rico Supreme Court's
        Decision Is Void. ....................................................................... 31

CONCLUSION ................................................................................. 32

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bennett*,
   317 B.R. 313 (Bankr. D. Md. 2004) ................................................. 9, 10

*Board of Governors v. MCorp Financial, Inc.*,
   502 U.S. 32 (1991) ............................................................................ 30

*In re El San Juan Hotel*,
   809 F.2d 151 (1st Cir. 1987) ....................................................... 3, 6, 8

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
   731 F. Supp. 3d 531 (S.D.N.Y. 2024) ................................................. 4

*F.D.I.C. v. Shearson-American Express, Inc.*,
   996 F.2d 493 (1st Cir. 1993) ............................................................... 7

*Greenbaum v. Bailey*,
   781 F.3d 1240 (10th Cir. 2015) ......................................................... 15

*In re Hart*,
   282 B.R. 70 (B.A.P. 1st Cir. 2002) .................................................... 31

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,
   997 F.2d 581 (9th Cir. 1993) ....................................................... 18, 23

*Homer Nat'l Bank v. Namie*,
   96 B.R. 652 (W.D. La. 1989) ............................................................... 9

*In re Int'l Forex of Cal., Inc,*,
   247 B.R. 284 (Bankr. S.D. Cal. 2000) ........................................... 9, 10

*Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*,
   No. 25-cv-02262, 2025 WL 3035792
   (E.D. Cal. Oct. 30, 2025) ..................................................... 4, 6, 12, 13

*In re Makris*,
   482 F. App'x 695 (3d Cir. 2012) ........................................................ 17

ii

*In re McMullen*,
386 F.3d 320 (1st Cir. 2004) .............................................. 18, 26, 27, 28

*Kinetica Partners, LLC v. U.S. Dep't of the Interior*,
505 F. Supp. 3d 653 (S.D. Tex. 2020) ............................................ 13, 14

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)................................................................................6

*Neira Rivera v. Scotiabank de P.R.*,
14 F.4th 60 (1st Cir. 2021)................................................................. 7, 8

*In re Newcomer*,
416 B.R. 166 (Bankr. D. Md. 2009) .....................................................11

*In re Pecan Groves of Ariz.*,
951 F.2d 242 (9th Cir. 1991)............................................................ 7, 10

*In re Peeples*,
880 F.3d 1207 (10th Cir. 2018)..................................................... 11, 12

*Powell v. Alexander*,
391 F.3d 1 (1st Cir. 2004) .................................................................25

*In re Reserves Dev. Corp.*,
64 B.R. 694 (W.D. Mo. 1986) ...............................................................9

*In re Royal*,
137 F. App'x 537 (4th Cir. 2005)................................................... 18, 23

*In re Ruiz*,
122 F.4th 1 (1st Cir. 2024)................................. 17, 22, 26, 27, 28, 29

*S.E.C. v. Brennan*,
230 F.3d 65 (2d Cir. 2000) .................................................................22

*In re Soares*,
107 F.3d 969 (1st Cir. 1997) ..............................................................31

*In re Spookyworld, Inc.*,
346 F.3d 1 (1st Cir. 2003) .................................................................30

*St. Paul Fire & Marine Insurance Co. v. Labuzan,*
　579 F.3d 533 (5th Cir. 2009) ...................................................... 8, 9, 11

*State of Mo. v. U.S. Bankr. Ct.,*
　647 F.2d 768 (8th Cir. 1981) .............................................................. 23

*Triangle Cayman Asset Co. v. LG & AC, Corp.,*
　52 F.4th 24 (1st Cir. 2022) ................................................................ 31

*United States v. Dunbar,*
　553 F.3d 48 (1st Cir. 2009) ............................................................... 24

*United States v. Miller,*
　No. 02-cv-0168, 2003 WL 23109906 (N.D. Tex. Dec. 22, 2003) ............ 9

*Viernes v. DNF Assocs., LLC,*
　582 F. Supp. 3d 738 (D. Haw. 2022) ................................................... 6

**Statutes**

3 L.P.R.A. § 341e ............................................................................ 25

11 U.S.C. § 362(a)(3) ....................................................................... 16

11 U.S.C. § 362(b)(4) ................................................................ *passim*

**Other Authorities**

Enforce, Black's Law Dictionary (12th ed. 2024) ................................ 17

Enforce, *Merriam-Webster Online Dictionary* (2026) ............................ 17

iv

## INTRODUCTION

This appeal presents a straightforward question: Does an action by a governmental unit to invalidate another agency's regulatory order—implementing a core term of a debtor's post-petition contract—constitute an enforcement action within the police-power exception to the automatic stay, even when no violation of the filing agency's regulations, orders, or penalties is alleged? The answer is no, so this Court should vacate the Title III Court's contrary ruling.

DACO's Commonwealth Court Litigation sought and obtained a declaration that the liability waiver granted pursuant to Section 4.1(g) of the OMA was unconstitutional and void. That relief does not "enforce" any DACO regulation, order, or penalty—it negates another regulator's order and alters a material term of a government contract. Section 362(b)(4) does not reach that far, and the Title III Court's contrary conclusion was legal error.

To avoid the merits, Appellees argue that LUMA lacks standing. They are wrong. LUMA has standing to appeal because the Title III Court's order directly and adversely affects LUMA's pecuniary interests. The order permitted litigation that resulted in the Puerto Rico Supreme

1

Court voiding a contract term and regulatory action that protected LUMA from tort liability, thereby diminishing LUMA's property, increasing its burdens, and impairing its rights.

On the merits, Appellees fail to grapple with the central deficiency in the Title III Court's analysis. DACO was not "enforc[ing]" its regulatory power within the meaning of Section 362(b)(4). Yet the court found that the police-power exception applied by conflating DACO's general consumer-protection remit with enforcement of its "police or regulatory power." The exception requires a governmental unit to file a lawsuit to enforce *its own* police power—not to use litigation to undo another agency's regulatory action and rewrite a debtor's contract. Appellees' contrary interpretation would exempt nearly all government litigation from the automatic stay so long as the government invokes consumer welfare—a reading with no limiting principle that cannot be squared with the statute's text.

Reversal is also warranted because DACO's lawsuit fails the pecuniary-purpose and public-policy tests. Enabling private tort suits for money damages is inherently a pecuniary purpose, and attacking a

2

specific contract term approved by another agency is not enforcement of generally applicable regulatory law under the public-policy test.

LUMA thus requests that this Court reverse the Title III Court's order, hold that DACO's Commonwealth Court Litigation violated the automatic stay, and remand with instructions to enforce the stay and declare void any actions taken in violation of it.

## ARGUMENT

### I.    LUMA HAS STANDING TO APPEAL.

Appellees erroneously argue that LUMA lacks standing. ICSE Br. 6-10; DACO Br. 17-18. LUMA has standing because the Title III Court's order directly and adversely affects LUMA's pecuniary interests.

#### A.    The Title III Court's Order Directly and Adversely Affects LUMA's Pecuniary Interests.

Appellate standing in the bankruptcy context exists where the appealed-from order "directly and adversely affect[s] [the appellant's] pecuniary interests." *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987). An appellant satisfies this "person aggrieved" standard by showing "the order diminishes his property, increases his burdens, or impairs his rights." *Id.*

3

*First*, LUMA has made each showing, even though it only needs to make one: The Title III Court's order diminished LUMA's property, increased its burdens, *and* impaired its rights. *See id.*

The order "impairs [LUMA's] rights" under the OMA. LUMA's right to the liability waiver has been extinguished, and LUMA's contractual expectation that the OMA's negotiated risk allocation would remain intact has been upended. *See Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*, No. 25-cv-02262, 2025 WL 3035792, at *2 (E.D. Cal. Oct. 30, 2025) (finding standing where bankruptcy court order "exposes appellants to increased liability"); *see also Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 569 (S.D.N.Y. 2024) ("A party to a contract need not have suffered direct financial loss to have a stake in its enforcement[.]").

The order also "diminishes [LUMA's] property" by stripping away the liability waiver LUMA bargained for as part of the OMA—a material term of the contract, with concrete economic value that no longer exists.

The order also increases LUMA's burdens by exposing LUMA to consumer tort litigation across Puerto Rico, requiring expenditure of resources on defense, discovery, settlement, and the uncertainty of

4

seeking indemnification from a debtor in Title III proceedings. The Puerto Rico Supreme Court confirmed that the OMA's liability waiver "impose[d] a legal barrier" to lawsuits that "in practice, equates to immunity for LUMA." App. 803; *see id.* (immunity in Puerto Rico "is not merely a defen[s]e it is rather the absence of a cause of action," such that "whoever enjoys immunity cannot be the subject of litigation").

*Second*, these harms are directly traceable to the Title III Court's order. The court denied LUMA's motion to enforce the stay, permitting the Commonwealth Court Litigation to continue to the Puerto Rico Supreme Court, which declared Section 4.1(g) and the liability waiver void. App. 762-896. Had the Title III Court enforced the stay, both would have remained in place.

*Third*, the pecuniary nature of the harm is clear. DACO's complaint expressly sought to "[a]llow all citizens to file claims for damages caused by negligence and fluctuations in the electric power service before LUMA." App. 381. The Puerto Rico Supreme Court granted that relief. App. 813. LUMA now faces exposure to damages claims by potentially thousands of consumers—claims that would have been barred by the OMA's liability waiver. The pecuniary injury is LUMA's present exposure

to liability that did not exist before the Title III Court's order (and would not exist but for that order). Courts routinely recognize that exposure to liability and litigation—not just an adverse money judgment—constitutes concrete injury.[1] *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007); *Roman Cath. Bishop of Sacramento*, 2025 WL 3035792, at *2; *Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 749 (D. Haw. 2022) ("[B]eing subjected to an unlawful lawsuit bears a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.").

---

[1] DACO wrongly argues that *San Juan Hotel* stands for the sweeping proposition that a "litigant's interest in defending itself against liability is not sufficient to ground appellate standing." DACO Br. 18. But this Court did not announce such a per se rule. Rather, this Court held that there was no standing on the facts of that case: even though the former trustee appellant did "have an interest in defending himself against liability," there was no standing because the appealed-from order did not affect that interest—it did not prevent the former trustee "from asserting any claims or defenses he may have, including a motion for summary judgment." *San Juan Hotel*, 809 F.2d at 155. But, as explained, that is not the case here—the appealed order does in fact subject LUMA to damages claims it never would have been subjected to and forecloses LUMA from asserting an immunity defense based on the OMA.

LUMA has appellate standing under the "person aggrieved" standard.[2]

### B.    Appellees' Contrary Standing Arguments Lack Merit.

### 1.    Creditors May Invoke the Automatic Stay Where They Have a Sufficient Stake in Its Protection.

Relying on a non-binding Ninth Circuit decision, DACO contends that "only the debtor or trustee" (or the Oversight Board here) may "appeal an adverse decision regarding a violation of automatic stay." DACO Br. 17 (quoting *In re Pecan Groves of Ariz.,* 951 F.2d 242, 245 (9th Cir. 1991)); *see* ICSE Br. 7-8. That is not the law of this Circuit.[3] This

---

[2] Because the Article III and person-aggrieved standards overlap and latter "is more stringent than the one under Article III," *Neira Rivera,* 14 F.4th at 66, LUMA readily satisfies Article III's requirements of injury in fact, traceability, and redressability. LUMA has suffered a concrete injury in fact: the loss of valuable protection from tort liability, exposure to consumer damages suits, and impairment of its rights under the OMA. That injury is directly traceable to DACO's Commonwealth Court lawsuit—the very litigation that LUMA sought to stay and culminated in the Puerto Rico Supreme Court's invalidation of the liability waiver. And the injury is redressable by a favorable decision: if this Court rules in LUMA's favor, the Puerto Rico Supreme Court's judgment will be void under settled law, restoring the liability waiver and LUMA's contractual protections. LUMA Br. 18-19; *infra,* Section IV.

[3] While DACO cites dicta from *F.D.I.C. v. Shearson-American Express, Inc.*, 996 F.2d 493, 497 (1st Cir. 1993), characterizing the creditor's standing to appeal as "problematic," the Court expressly declined to

Court's precedents hold that an "aggrieved person" may appeal so long as a bankruptcy order "directly and adversely" affects its pecuniary interests. *See, e.g., Neira Rivera v. Scotiabank de P.R.*, 14 F.4th 60, 66 (1st Cir. 2021); *San Juan Hotel*, 809 F.2d at 154. That rule applies with equal force when the aggrieved person appeals an order regarding an automatic stay violation.

Courts have held that creditors may seek enforcement of the stay (and appeal where such enforcement is denied) when they have sufficient stake in the outcome. The Fifth Circuit's opinion in *St. Paul Fire & Marine Insurance Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009), is illustrative. There, the court held that "debtors and creditors are entities whose grievances fall 'within the zone of interests' protected by" the automatic stay when they allege harms the stay was designed to prevent. *Id.* at 540, 543. After surveying the case law, the court concluded that "the weight of authority" supports the conclusion that both "debtors and

---

address the standing issue and resolved the appeal on other grounds, *id.* ("We do not pass on these [standing] issues, however, as we are satisfied, *infra,* that Prudential is barred by *res judicata* from raising the automatic stay as a bar."). That stray remark from thirty years ago does not announce a rule of law or support Appellees' arguments.

creditors" may seek to enforce the stay and appeal adverse rulings. *Id.* at 543.

Other courts agree. In *In re Reserves Development Corp.*, secured creditors with an interest in debtor property had standing to enforce the stay. 64 B.R. 694, 699-700 (W.D. Mo. 1986), *rev'd on other grounds*, 821 F.2d 520 (8th Cir. 1987). In *Homer National Bank v. Namie*, the court upheld a creditor's standing to pursue a stay violation, reasoning that "it seem[s] illogical to conclude that Congress intended to limit [Section 362(h)] to debtors when one of the principal purposes behind the automatic stay is to protect creditors." 96 B.R. 652, 655 (W.D. La. 1989). In *United States v. Miller*, the United States had standing as a lienholder to pursue a stay violation because its interest was harmed. 2003 WL 23109906, at *9 (N.D. Tex. Dec. 22, 2003). In *In re International Forex of California*, the court found creditor standing, noting that the automatic stay is "intended to benefit creditors, as well as debtors." 247 B.R. 284, 291 (Bankr. S.D. Cal. 2000). And *In re Bennett* (a case ICSE relies on), the court held that "[t]he stay is intended to protect the interests of creditors as well as debtors, and [t]hose persons whom Congress has

9

designated as beneficiaries of the stay have standing to assert its violation." 317 B.R. 313, 318 (Bankr. D. Md. 2004).

These authorities confirm LUMA's standing. LUMA is a post-petition creditor of PREPA. The OMA has been treated as an administrative expense of PREPA's estate, and the litigation DACO filed threatens to impose liability on LUMA that would ultimately be borne, at least in part, by the estate through PREPA's indemnification obligations. Add. 3. LUMA's claims fall within the zone of interests the automatic stay protects.

DACO's reliance on *Pecan Groves* is misplaced. DACO Br. 17-18. *Pecan Groves* is non-binding, and courts within the Ninth Circuit have observed that it has been "overstated for the proposition that the automatic stay is solely for the benefit of a debtor." *Int'l Forex of Cal.*, 247 B.R. at 291. *Pecan Groves* was cabined to a specific procedural posture: unsecured creditors seeking to intervene after the chapter 7 trustee declined to appeal. 951 F.2d at 245; *see Int'l Forex of Cal.*, 247 B.R. at 291 (observing *Pecan Groves* holds only that "where a chapter 7 trustee opts not to appeal an adverse ruling on an alleged stay violation, intervening creditors may not do so"). As the Fifth Circuit recognized, *Pecan Groves*

10

did not resolve "whether creditors could initiate an action based on an automatic-stay violation (as opposed to appealing it where a trustee fails to do so)." *Labuzan*, 579 F.3d at 543. Here, LUMA *initiated* the motion to enforce the stay, the Oversight Board aligned with LUMA's position below (App. 19), and LUMA has a direct pecuniary interest in the outcome.[4]

DACO's reliance on *In re Peeples*, 880 F.3d 1207 (10th Cir. 2018), is similarly misplaced. DACO Br. 18. In *Peeples*, the creditor lacked standing because its only claimed injury—avoiding attorney's fees in unrelated state-court litigation—fell "outside the stay's zone of interests," unlike LUMA's injuries here. *Id.* at 1214-15. And here, LUMA's injury is

---

[4] The district court case ICSE cites for the proposition that "non-debtors are not protected by the automatic stay and generally lack standing to invoke it" undermines ICSE's position. ICSE Br. 7 (citing *In re Newcomer*, 416 B.R. 166 (Bankr. D. Md. 2009)). *Newcomer* stated the opposite: standing to enforce the stay exists where the plaintiff has "a personal stake in the outcome of the controversy" and is "in the class of persons intended to benefit" from the stay. 416 B.R. at 175 (recognizing "the stay is intended to protect the interests of creditors as well as debtors"). The plaintiff in *Newcomer*—the debtor's wife—lacked standing to enforce the stay because she "is not (and was not) either a debtor *or a creditor*." *Id.* (emphasis added). Unlike a debtor's spouse with no relationship to the bankruptcy, LUMA is a creditor that falls within the class of persons the stay is intended to protect.

11

inextricably tied to its creditor relationship with PREPA. Under the OMA, PREPA must indemnify LUMA for customer claims arising from operation of the T&D System. App. 176. As consumers continue to sue LUMA for damages, LUMA will assert indemnification claims against PREPA's estate. The harm to LUMA as a creditor is direct: LUMA will hold claims against an estate in Title III proceedings with limited resources. The harm to the estate is equally direct: DACO's lawsuit exposes the estate to potentially massive indemnification obligations. Unlike *Peeples*, enforcing the stay here protects both LUMA's creditor interests and the estate's administration.

### 2.    LUMA's Injuries Are Concrete, Not Speculative.

Appellees contend that LUMA's injuries are "speculative" because they depend on a supposed chain of contingencies—consumer lawsuits, liability findings, and failed indemnification. DACO Br. 14; ICSE Br. 6-8. This argument misunderstands the injury and ignores the burden. The harm is not speculative future liability; it is the *present* nullification of LUMA's complete defense to pending and anticipated litigation. Where an order results in "exposure to liability," such effects are pecuniary and "neither speculative nor anticipatory." *Interstate Fire & Cas. Co.*, 2025

12

WL 3035792, at *3; *see Kinetica Partners, LLC v. U.S. Dep't of the Interior*, 505 F. Supp. 3d 653, 667-68 (S.D. Tex. 2020).

Appellees also conflate the merits of the underlying tort lawsuits with standing. The question is not whether LUMA will ultimately prevail in future litigation or recover under indemnification provisions. The question is whether LUMA has a concrete financial stake in the stay issue. It plainly does.

Moreover, the "chain of contingencies" Appellees posit has already begun. On December 17, 2025—after LUMA filed its opening brief—a plaintiff filed a civil action against LUMA, asserting negligence claims relating to LUMA's operation and maintenance of the T&D system and seeking hundreds of thousands of dollars in damages. LUMA Supp. App. 80-87. These damages claims would have been barred by the liability waiver. Three class actions are also pending against LUMA, asserting claims for negligence and collectively seeking hundreds of millions of dollars. *See* LUMA Supp. App. 4-26, 45-52, 98-106. Those actions were filed before the Puerto Rico Supreme Court invalidated the waiver, so the plaintiffs could not then pursue monetary recovery from LUMA. Now

13

they may. These pending actions definitively undercut Appellees' speculative-harm arguments.[5]

### 3. The OMA's Indemnification Provisions Do Not Eliminate LUMA's Injury.

ICSE argues the OMA's indemnification provisions eliminate any injury. ICSE Br. 8-10. This argument misreads the OMA and misunderstands the injury that establishes LUMA's standing.

At the outset, ICSE's argument is fatally undermined by its own contention that the OMA "bars indemnification for precisely the category

---

[5] In an attempted "gotcha," ICSE cites a filing by LUMA in administrative proceedings before PREB on December 17, 2025—only sixteen days after the Puerto Rico Supreme Court issued its decision—in which LUMA said it had only "begun to formulate rough estimates" of what it will cost LUMA to deal with the newly filed claims. ICSE Br. 9-10 (citing ICSE Supp. App. 5-7, Doc. No. 00118397576). According to ICSE, this somehow constitutes an admission that "the alleged consequences of the Puerto Rico Supreme Court's ruling are speculative." ICSE Br. 9-10. That does not follow. It is hardly surprising that LUMA was still assessing (and thus could not precisely quantify) the financial implications of the Puerto Rico Supreme Court's decision a few weeks after it had been issued. That does not render the harms arising from that decision and the Title III Court's order speculative. ICSE cites nothing for its novel suggestion that standing exists only if pecuniary harm can be calculated with immediate and exact mathematical certainty. *See Kinetica Partners*, 505 F. Supp. 3d at 666 (accepting approximate cost estimates as sufficient to establish injury). The recent lawsuits against LUMA for damages alone establish concrete pecuniary harm LUMA.

of claims LUMA insists would threaten the estate." ICSE Br. 9. While LUMA disagrees, that is beside the point for standing purposes. The fact that LUMA's right to indemnification is already being challenged confirms LUMA has been harmed by invalidation of the liability waiver; were the waiver still in effect, there would be no need for indemnification.

Even complete indemnification would not eliminate injury for standing purposes. Seeking indemnification imposes costs, administrative burdens, and litigation risk. And indemnification presupposes that LUMA will first be sued and held liable—precisely the exposure the liability waiver would have prevented. The OMA's risk allocation reflects a negotiated judgment that prevention of liability is preferable to after-the-fact indemnification. Judicial nullification of those liability protections is cognizable injury.

ICSE's argument also reveals an internal contradiction. ICSE contends LUMA's indemnification rights eliminate harm because PREPA will reimburse LUMA, while simultaneously arguing that LUMA is not entitled to indemnification. ICSE Br. 8-9. ICSE cannot have it both ways. If indemnification applies, the estate will bear the cost of consumer tort liability—supporting LUMA's standing as a creditor. If indemnification

15

does not apply, LUMA will bear that liability directly—supporting LUMA's standing as a party whose contractual rights have been impaired.

Finally, Appellees' standing arguments ignore the practical reality that PREPA remains in Title III proceedings with limited resources. The prospect of full indemnification depends on PREPA's ability to pay—an ability that consumer tort liability would further strain. Enforcing the stay protects both LUMA as a creditor and PREPA's estate from cascading tort liability.

## II.    The Title III Court Erred by Failing to Analyze the Statutory Text of Section 362(b)(4).

Turning to the merits, Appellees contend that the Title III Court correctly applied Section 362(b)(4).[6] But the court's one-paragraph analysis of the text began and ended with two propositions: DACO is a governmental unit, and DACO invoked consumer protection. App. 7-9. That is not the inquiry the statute requires. Appellees' attempt to defend that analysis underscores that neither the Title III Court nor Appellees

---

[6] Appellees do not dispute the automatic stay applies to the Commonwealth Court Litigation—which is an act "to exercise control over property" of PREPA under 11 U.S.C. § 362(a)(3)—as LUMA established in its brief. LUMA Br. 18-24.

16

apply "the statutory text to the facts of [the] case," as required. *In re Ruiz*, 122 F.4th 1, 13 (1st Cir. 2024).

### A. DACO Is Not "Enforcing" any Regulation, Order, or Penalty Within Its Police or Regulatory Power.

Section 362(b)(4)'s plain text does not encompass the Commonwealth Court Litigation. LUMA Br. 25-30. This conclusion flows from the plain meaning of "enforce" and is confirmed by principles of statutory construction, the structure of the Bankruptcy Code, and its legislative history—all of which Appellees ignore.

Begin with the statute's text. Section 362(b)(4) exempts only a government unit's commencement of proceedings "to enforce such governmental unit's . . . police and regulatory power." 11 U.S.C. § 362(b)(4). Determining whether this exception encompasses DACO's litigation thus hinges on the meaning of the verb "enforce." Common definitions of "enforce" include "to give force or effect to (a law, etc.)," and "to compel obedience to" something. BLACK'S LAW DICTIONARY (12th ed. 2024); *see Merriam-Webster Online Dictionary* (2026).[7] The term

---

[7] *Greenbaum v. Bailey*, 781 F.3d 1240, 1244 (10th Cir. 2015) ("The verb 'enforce' is defined as '[t]o give force or effect to (a law, etc.); to compel obedience to.'"); *In re Makris*, 482 F. App'x 695, 699 (3d Cir. 2012) (same).

contemplates that the governmental unit is implementing or compelling compliance with its own laws, regulations, orders, or penalties. *See In re McMullen*, 386 F.3d 320, 324-25 (1st Cir. 2004); *In re Royal*, 137 F. App'x 537, 541 (4th Cir. 2005). Neither Appellees nor the Title III Court apply Section 362(b)(4) in a manner that gives effect to this term's plain meaning.

Next, consider interpretative principles. Stay exceptions— including the police-powers exception—must be "narrowly construed." *In re McMullen*, 386 F.3d at 325; *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 590 (9th Cir. 1993) (citing cases). Yet the Title III Court adopted a broad interpretation without applying this principle, and Appellees urge a similarly sweeping interpretation here.

The structure and history of the Bankruptcy Code confirm narrow application. The Code is structured in a way that grants bankruptcy courts authority to "quickly and easily correct issues resulting from a problematic stay," but "no power to correct issues caused by a problematic exception to a stay." *In re Royal*, 137 F. App'x at 541. And the legislative history makes clear that the exception applies "*only* . . . [in] situations in which a governmental entity is using its police power 'to prevent or stop

violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws.'" *Id.* (quoting Senate Report, 1978 U.S.C.C.A.N. at 5838; House Report, 1978 U.S.C.C.A.N. at 6299).

Appellees do not engage with the plain text, the principle of narrow construction, the Code's structure, or the legislative history, yet each confirms that DACO's complaint is outside Section 362(b)(4)'s scope. DACO did not seek to "enforce"—*i.e.*, "give force or effect to" or "compel obedience to"—any DACO regulation, administrative order, or penalty. It sought a declaratory judgment that PREB's order and OMA Section 4.1(g) are "null and unconstitutional" based on separation-of-powers principles. App. 381. The prayer for relief asked the court to "[a]llow all citizens to file claims for damages." App. 381. That is not enforcement of ***DACO's*** police power; it is an attempt to negate another agency's regulatory determination and enable private monetary recoveries. The statute's use of "such governmental unit" is a reference to the specific government entity bringing the enforcement action and thus confirms here that the Commonwealth Court Litigation must have involved enforcement of DACO's *own* police power—not the police powers of the Puerto Rico government at large. DACO has issued no regulation

governing liability waivers in utility contracts, entered no administrative order against LUMA, and sought no penalty, injunction, or compliance directive. Section 362(b)(4) covers enforcement of police power, not litigation about the scope of another agency's power.

### B.    Appellees' Arguments Are Inconsistent with the Text of Section 362(b)(4).

DACO responds by mischaracterizing LUMA's argument. DACO Br. 26-29. LUMA does not contend governmental bodies may never disagree or litigate against one another. LUMA's argument is that the Commonwealth Court Litigation is not encompassed by Section 362(b)(4), which requires DACO to enforce "such governmental unit's [*i.e.*, its own] . . . police and regulatory power." The question is whether the Commonwealth Court Litigation constitutes "enforcement" of DACO's police power—not whether DACO may challenge PREB's action as a matter of Puerto Rico law.

DACO offers no authority—"not a case, not a treatise, nothing" (DACO Br. 26)—for the proposition that an agency's challenge to another agency's order constitutes enforcement of the challenger's police power.

DACO's hypothetical—imagining that DACO had challenged a waiver LUMA itself imposed—proves LUMA's point. DACO Br. 27. Without explanation, DACO simply concludes that, in this scenario, "there would be no question that DACO had exercised its consumer-protection power." *Id.* LUMA disagrees, as DACO does not explain how such a challenge would involve DACO's enforcement of its own specific regulatory or police power—much less identify a specific regulation or power it would be enforcing in such an action. But even assuming that DACO could make such a showing, that is a far cry from this case, where DACO does not allege that LUMA violated any DACO regulation or engaged in prohibited conduct, or did anything other than operate under a liability waiver approved by another regulator. DACO's lawsuit does not seek to stop or punish misconduct by LUMA; it seeks a declaration that PREB exceeded its statutory authority. That distinction is not merely a question of "where the liability waiver came from," DACO Br. 27, but rather goes to what Section 362(b)(4) requires. When DACO challenges another agency's regulatory action on constitutional grounds, it is not enforcing any DACO regulation—it is asking a court to declare that a different agency acted *ultra vires*. Section 362(b)(4) covers the

21

former, not the latter. A contrary conclusion cannot be reconciled with the statutory text.

DACO next urges this Court to bypass the plain-text analysis and conclude that the exception applies whenever "the government seeks to impose financial liability on a party." DACO Br. 23 (quoting *S.E.C. v. Brennan,* 230 F.3d 65, 72 (2d Cir. 2000)). That formulation ignores Section 362(b)(4)'s text, which requires enforcement of "such governmental unit's . . . police and regulatory power"—not any government lawsuit seeking to impose liability of any kind. It disregards the rule that stay exceptions must be "narrowly construed." *Ruiz,* 122 F.4th at 13. And it offers no limiting principle: under DACO's theory, a state suing a debtor for breach of a commercial lease or a municipality seeking damages for a failed construction project would fall within the exception simply because the government seeks financial liability. But the exception exists to permit the government to protect public health, safety, and welfare through regulatory enforcement—not to exempt every liability-oriented lawsuit filed by the government.

DACO misses the point by arguing that "litigation is a valid method for exercising police or regulatory power." DACO Br. 29. True enough in

22

the abstract. But not every lawsuit is an enforcement action. *See, e.g.*, *Hillis Motors*, 997 F.2d at 590; *In re Royal*, 137 F. App'x at 541; *State of Mo. v. U.S. Bankr. Ct.*, 647 F.2d 768, 776 (8th Cir. 1981). The method is not determinative of the exception's application; the object of the litigation is. Here, the object was to invalidate PREB's order and a contract term—relief that does not implement any DACO rule, adjudication, or standard.

ICSE strays farther from the text by arguing that "affirmance is necessary to avoid structural regulatory inequality." ICSE Br. 14. But ICSE provides no basis in law or fact for this vague and underdeveloped argument. Either the police-power exception applies or it does not. If it does not, purported "structural regulatory inequality" cannot justify affirming a legally erroneous order.

Finally, this Court should reject DACO's forfeiture argument. DACO Br. 24-25. LUMA has consistently maintained that the Commonwealth Court Litigation does not fit within Section 362(b)(4). LUMA first raised these arguments in a reply brief, responding to DACO's invocation of the police-power exception for the first time in its opposition to LUMA's urgent motion to enforce the stay. In its reply,

23

LUMA explicitly argued that "DACO's attack on Section 4.1(g) does not fall within 11 U.S.C. 362(b)(4)." App. 588, 591-592. LUMA also emphasized DACO's lack of regulatory authority over the OMA and argued that DACO's lawsuit amounted to an attack on PREB's approval of the liability waiver. *Id.* There is no forfeiture, especially in light of the expedited nature of the underlying briefing.

Moreover, the Title III Court addressed and rejected these arguments. Add. 9, 14 & n.10. LUMA directly addressed the Title III Court's errors in its opening brief. DACO's forfeiture argument would prohibit LUMA from challenging the court's reasoning on appeal, but that is precisely what appeals are for. DACO cannot use the forfeiture doctrine to insulate the court's statutory analysis from appellate review.

This Court has rejected waiver arguments even where an appellant's "brief does not state [a] claim artfully" because the brief's "fact section does identify" the relevant facts and "the argument section does identify" the relevant legal authority. *United States v. Dunbar*, 553 F.3d 48, 63 n.4 (1st Cir. 2009). Here, LUMA's brief below identified the critical facts and the legal basis. That is sufficient. And even if this Court disagrees, it can exercise its discretion to excuse forfeiture to resolve an

24

"important," purely legal argument regarding the proper interpretation of Section 362(b)(4). *Powell v. Alexander*, 391 F.3d 1, 21 n.24 (1st Cir. 2004).

**C.    The Title III Court and Appellees Conflate DACO's General Remit with Enforcement of Its Police Powers.**

Instead of interpreting Section 362(b)(4)'s plain meaning, the Title III Court's analysis rested on the text of another statute—DACO's "organic statute," 3 L.P.R.A. § 341e. *See* Add. 9. The court concluded that because DACO's organic statute authorizes it to "appear for and on behalf of consumers before any court" and to "promote and watch over the enforcement of all laws . . . which affect the interests of the consumer," the Commonwealth Court Litigation is an exercise of "the police or regulatory powers provided to DACO." *Id.* (quoting 3 L.P.R.A. § 341e). Appellees repeat this error. *See* DACO Br. 6-7, 21-23, 29; ICSE Br. 12-13.

DACO's statutory standing to file suit is not synonymous with its enforcement of police power within the meaning of Section 362(b)(4). While DACO may have broad litigation authority, not every lawsuit it files is an enforcement action exempt from the stay. Such a conclusion would negate any limitation on the exception and conflict with the

25

principle that stay exceptions should be construed narrowly. *McMullen*, 386 F.3d at 325.

DACO's litigation did not enforce any DACO-promulgated rule or standard. It challenged the validity of PREB's regulatory action under Puerto Rico constitutional law. DACO's successful constitutional challenge to another agency's action does not transform that challenge into an action enforcing DACO's police power. It confirms that DACO was challenging another agency's regulatory scheme, not enforcing its own.

## III. DACO'S LAWSUIT FAILS THE PECUNIARY-PURPOSE AND PUBLIC-POLICY TESTS.

Even if DACO's lawsuit satisfied Section 362(b)(4)'s text—which it does not—it would still fail the pecuniary-purpose and public-policy tests.[8] *See Ruiz*, 122 F.4th at 13-14; LUMA Br. 30-40.

### A. The Pecuniary-Purpose Test: The Lawsuit's Primary Effect Is to Facilitate Private Monetary Recoveries.

The Title III Court applied too narrow a lens when considering the pecuniary-purpose test, asking only whether DACO itself sought a monetary recovery. Add. 11. DACO similarly urges that the test is not satisfied because "DACO did not seek to recover money from anyone."

---

[8] Appellees do not contest that both tests must be satisfied.

DACO Br. 36. But *McMullen* expressly includes attempts to recover "on the nongovernmental debts of private parties." 386 F.3d at 325. DACO's complaint made plain that its primary objective was to enable private damages suits: The prayer for relief asked the court to "[a]llow all citizens to file claims for damages." App. 381. The entire point of the litigation was to remove a barrier to private lawsuits seeking damages. That is a pecuniary purpose.

DACO's attempt to divorce allowing consumers to bring claims for damages from "benefiting consumers financially" is sophistry. DACO Br. 37. DACO's complaint expressly sought to allow citizens to file damages claims. App. 381. The purpose of allowing damages claims is to allow damages recoveries. That DACO styles this as "accountability" does not change what the lawsuit actually does.

Although *Ruiz* rejected the contention that "any time a government action serves any private pecuniary interest to any degree, the police power exception cannot apply," 122 F.4th at 15, *Ruiz* preserved the core inquiries: whether the action falls within the scope of the exception's plan text and, if so, whether it is "designed primarily to protect the public safety and welfare," as opposed to "a governmental attempt to recover . .

27

. on the nongovernmental debts of private parties." *McMullen*, 386 F.3d at 325. DACO's action was designed primarily to enable private recoveries. It thus fails the pecuniary-purpose test.

## B. The Public-Policy Test: DACO's Lawsuit Does Not Enforce Generally Applicable Regulatory Law.

DACO's lawsuit does not enforce any generally applicable regulatory law. LUMA Br. 35-40. It attacks a specific contractual and regulatory arrangement. The relief DACO sought was a declaration that PREB acted *ultra vires* and that the contract term is unconstitutional. That is litigation to invalidate a particular regulatory action—not enforcement of a generally applicable regulatory scheme.

Appellees argue that "consumer protection" is inherently a public-policy objective. But the public-policy test does not ask whether the governmental unit invokes a sympathetic purpose. It asks whether the particular proceeding "effectuate[s] public policy" by enforcing generally applicable regulatory laws—or instead "adjudicate[s] private rights." *Ruiz*, 122 F.4th at 14. The effect of DACO's lawsuit is to enable private tort suits for private monetary recoveries. That is the adjudication of private rights, not enforcement of regulatory laws.

28

*Parkview Adventists Medical Center v. United States* illustrates the distinction. 842 F.3d 757 (1st Cir. 2016). There, CMS terminated its own contract with the debtor as an exercise of CMS's regulatory power under the Medicare statute. *Id.* at 764. This Court held that staying the termination "would threaten CMS's ability to enforce generally the Medicare statute's carefully articulated regulatory structure." *Id.* Here, DACO is not a party to the OMA, is not exercising regulatory authority over LUMA's conduct, and is asking a court to declare that a different agency's action was ultra vires. That is categorically not an enforcement action.

### C.    Appellees Misread the Authorities on Which They Rely.

Appellees rely heavily on *Ruiz*, but that case supports LUMA's position. In *Ruiz*, the Puerto Rico Milk Industry Regulatory Office (ORIL) revoked a debtor's dairy license and proposed to auction his milk quota—a quintessential exercise of the agency's own regulatory authority. 122 F.4th at 7-8. ORIL's actions fell within the exception because ORIL was enforcing its own regulatory scheme. *Id.* at 13-15. Here, DACO is not revoking a license, imposing a penalty, or compelling compliance with

29

DACO standards or regulations. It asked a court to declare that PREB exceeded its authority and to invalidate a contract provision. That is not comparable to ORIL's enforcement of the milk-quota regime.

Appellees invoke *Board of Governors v. MCorp Financial, Inc.*, 502 U.S. 32 (1991), and *In re Spookyworld, Inc.*, 346 F.3d 1 (1st Cir. 2003), for the proposition that courts may not "inquire into the legitimacy of governmental action" when applying Section 362(b)(4). DACO Br. 3. But LUMA asks this Court to determine whether DACO's action fits within the statutory text of Section 362(b)(4)—a permissible threshold textual ruling, not a forbidden merits inquiry.

*Spookyworld* is similarly inapposite. There, a town sought to close facilities posing "an immediate danger to the safety of the park's customers" by enforcing its own building code. 346 F.3d at 4. Again, here DACO is not enforcing any building code, safety regulation, or generally applicable law against LUMA's conduct. It is seeking a declaration that PREB's regulatory action was *ultra vires*.

Appellees note that the Puerto Rico Supreme Court agreed with DACO on the merits. DACO Br. 24. That is irrelevant. The question is not whether DACO was right about Puerto Rico's separation-of-powers

30

doctrine. The question is whether DACO's lawsuit fell within the police-power exception. The stay applies regardless of the merits of the underlying dispute.

## IV.    BECAUSE THE STAY APPLIES, THE PUERTO RICO SUPREME COURT'S DECISION IS VOID.

Actions taken in violation of the automatic stay are void *ab initio*. *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997); *see Triangle Cayman Asset Co. v. LG & AC, Corp.*, 52 F.4th 24, 35 (1st Cir. 2022) (judgments entered while stay in effect "were void and did not become effective when the automatic stay was lifted"); *In re Hart*, 282 B.R. 70, 73 (B.A.P. 1st Cir. 2002) (judgment obtained without relief from stay was "void and without legal effect"), *aff'd*, 328 F.3d 45 (1st Cir. 2003). Appellees do not disagree. DACO Br. 24 n.8 (acknowledging that "reversal here may void the Puerto Rico Supreme Court's judgment").

Because the automatic stay applies to DACO's action and the police-power exception does not, the proper remedy is to declare the Puerto Rico Supreme Court's decision void.

31

## CONCLUSION

For the foregoing reasons, LUMA respectfully requests that this Court reverse the Title III Court's order and hold that DACO's Commonwealth Court Litigation violated the automatic stay and is not exempt under Section 362(b)(4). LUMA further requests that this Court remand with instructions to enforce the stay and declare void the actions taken in violation of it.

Dated: February 20, 2025   Respectfully submitted,

*/s/ David Horniak*
David Horniak (Bar No. 1187585)
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

Dale K. Cathell (Bar No. 1143481)
Brett Ingerman (Bar No. 1220681)
**DLA PIPER LLP (US)**
650 S. Exeter Street, Ste. 1100
Baltimore, MD 21202-4576
T: (410) 580-4177
dale.cathell@us.dlapiper.com
brett.ingerman@us.dlapiper.com

Mariana Muñiz Lara (Bar No.
1172817)
**DLA PIPER (PUERTO RICO)
LLC**
B7 Tabonuco Street, Ste. 1501,
Guaynabo, Puerto Rico 00968-3349
T: (787) 945-9106
mariana.muniz@us.dlapiper.com

*Counsel for Appellants LUMA
Energy, LLC and LUMA Energy
Servco, LLC*

33

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify:

1.    This document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,299 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Size 14 Century Schoolbook.

February 20, 2025                    */s/David Horniak*

David Horniak
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

*Counsel for Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ David Horniak
David Horniak
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

*Counsel for Appellants*